```
                                          FILED
                                  CLERK, U.S. DISTRICT COURT

                                        08/18/2021

                                  CENTRAL DISTRICT OF CALIFORNIA
                                  BY: ____JBB____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JULIO CESAR MACIAS,<br>  aka "Troll,"<br>LOUIS MIGUEL VERA,<br>  aka "Clever" and<br>     "Luis Miguel Vera Barajas,"<br>DANIEL CARMONA,<br>  aka "Crook,"<br>     "Crooks," and<br>     "Krooks,"<br>TARCICIO GONZALEZ BARBA,<br>  aka "Cholo,"<br>NICOLAS ZUNIGA JUAN JR.,<br>  aka "Juan" and<br>     "Juanito,"<br>FNU LNU,<br>  aka "Angel" and<br>     "Chubbs,"<br>ESMERALDA YADIRA REYES, and<br>VICTOR HUGO NUNO,<br><br>    Defendants. | CR 2:21-cr-00390-PA<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii): Distribution of Methamphetamine; 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i), (b)(1)(C): Distribution of Heroin; 21 U.S.C. § 853, 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

## COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.  OBJECTS OF THE CONSPIRACY

Beginning on a date unknown, and continuing to on or about November 30, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants JULIO CESAR MACIAS, also known as ("aka") "Troll," LOUIS MIGUEL VERA, aka "Clever" and "Luis Miguel Vera Barajas," DANIEL CARMONA, aka "Crook," "Crooks," and "Krooks," TARCICIO GONZALEZ BARBA, aka "Cholo," NICOLAS ZUNIGA JUAN JR., aka "Juan" and "Juanito," First Name Unknown ("FNU") Last Name Unknown ("LNU"), aka "Angel" and "Chubbs" ("ANGEL"), ESMERALDA YADIRA REYES, and VICTOR HUGO NUNO conspired with each other, Co-Conspirator 1, Co-Conspirator 2, and others known and unknown to the Grand Jury, to knowingly and intentionally distribute, and possess with intent to distribute:

(1) at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, and at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii);

(2) at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(i); and

(3) at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic

drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II).

B. <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

The objects of the conspiracy were to be accomplished, in substance, as follows:

1. Defendant VERA would identify drug purchasers and agree to supply them with drugs.

2. Defendants MACIAS, GONZALEZ BARBA, and CARMONA would supply drugs to VERA.

3. Defendants CARMONA, ZUNIGA, and ANGEL would broker drug sales between a supplier and defendant VERA.

4. Defendants MACIAS, GONZALEZ BARBA, CARMONA, ZUNIGA, ANGEL, and VERA would meet with the drug purchasers and distribute the drugs in exchange for U.S. currency.

5. Defendant REYES would deliver drugs and collect drug proceeds on behalf of defendant CARMONA.

6. Defendant NUNO would sell drugs for defendant GONZALEZ BARBA.

C. <u>OVERT ACTS</u>

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, on or about the following dates, defendants MACIAS, VERA, CARMONA, GONZALEZ BARBA, ZUNIGA, ANGEL, REYES, and NUNO and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

June 11, 2018, Sale of One Pound of Methamphetamine

1. On or about June 6, 2018, using coded language in a telephone conversation, defendant VERA offered to sell methamphetamine for the price of $2,200 per pound to someone he believed was a customer, but who was, in reality, a confidential source ("CS") working at the direction of law enforcement.

2. On or about June 8, 2018, using coded language in a telephone conversation, defendant VERA informed the CS that he could obtain methamphetamine from two sources of supply and offered to sell the CS an ounce of heroin for $800.

3. On or about June 10, 2018, using coded language in a telephone conversation, defendant VERA confirmed that he would sell a pound of methamphetamine to the CS the following day.

4. On or about June 11, 2018, using coded language in a telephone conversation, defendant VERA informed the CS that he and defendant MACIAS would meet the CS at a Lowe's parking lot in Pacoima, California.

5. On or about June 11, 2018, at a Lowe's parking lot in Pacoima, California, defendants VERA and MACIAS sold 443.1 grams of methamphetamine to the CS and someone they believed was CS's associate, but who was, in reality, an undercover agent ("UC").

July 10, 2018, Sale of Three Pounds of Methamphetamine

6. On or about June 20, 2018, using coded language in a telephone conversation, defendant VERA offered to sell an ounce of heroin to the UC for $800.

7. On or about June 28, 2018, using coded language in a telephone conversation, defendant VERA offered to sell three pounds of methamphetamine to the UC.

4

8. On or about July 7, 2018, using coded language in a telephone conversation, defendant VERA said that his source of supply would sell the three pounds of methamphetamine for $2,200 per pound.

9. On or about July 10, 2018, using coded language in a telephone conversation, defendant VERA and the UC agreed to meet at around 2:00 p.m. at the Lowe's parking lot in Pacoima, California.

10. On or about July 10, 2018, defendant VERA drove to the residence of defendant MACIAS in Pacoima, California, and picked up defendant MACIAS.

11. On or about July 10, 2018, at the Lowe's parking lot in Pacoima, California, defendant GONZALEZ BARBA brought about three pounds of methamphetamine to sell to the UC.

12. On or about July 10, 2018, at the Lowe's parking lot in Pacoima, California, defendants VERA, MACIAS, and GONZALEZ BARBA sold 1,327 grams of methamphetamine to the UC for $6,600.

August 30, 2018, Sale of an Ounce of Heroin

13. On or about August 29, 2018, using coded language in a telephone conversation, defendant VERA offered to supply heroin to the UC in Los Angeles, California and in Arizona.

14. On or about August 29, 2018, using coded language in a telephone conversation, defendant VERA told the UC that he had obtained a supply of heroin for the UC and said that his supplier, that is, defendant CARMONA, would sell the heroin for $900 an ounce.

15. On or about August 29, 2018, defendant VERA gave the UC's telephone number to defendant CARMONA so that defendant CARMONA and the UC could complete the heroin transaction.

16. On or about August 29, 2018, using coded language in a telephone conversation, defendant CARMONA told the UC that he possessed the heroin and could sell it to the UC the following day.

17. On or about August 30, 2018, using coded language in a telephone conversation, defendant CARMONA arranged for defendant REYES to deliver the heroin to the UC on defendant CARMONA's behalf.

18. On or about August 30, 2018, defendant REYES sold 25.29 grams of heroin to the UC for $900 at the Lowe's parking lot in Pacoima, California.

19. On or about August 30, 2018, using coded language in a text message, defendant CARMONA instructed the UC that, if the UC wanted to purchase more drugs, the UC should contact defendant VERA, who in turn would contact defendant CARMONA.

<u>September 5, 2018, Offer to Sell an Ounce of Cocaine</u>

20. On or about September 5, 2018, defendant VERA sent the UC a text message containing a picture of cocaine.

21. On or about September 5, 2018, using coded language in a text message, defendant VERA told the UC that he had an ounce of cocaine for sale for $1,300.

<u>September 26, 2018, Sale of Five Pounds of Methamphetamine and One Ounce of Heroin</u>

22. On or about September 24, 2018, using coded language in a text message, defendant VERA told the UC that the UC could contact defendant CARMONA to purchase methamphetamine.

23. On or about September 24, 2018, using coded language in a series of text messages, defendant CARMONA told the UC that he could supply six pounds of methamphetamine and that he planned to meet with his source of supply in Los Angeles, California, later that day.

24. On or about September 25, 2018, using coded language in a telephone call, defendant CARMONA told the UC that his other source of supply could sell five pounds of methamphetamine for $2,200 per pound.

25. On or about September 26, 2018, using coded language in a series of text messages and telephone calls, defendant CARMONA agreed to meet the UC at the Lowe's parking lot for the transaction.

26. On or about September 26, 2018, defendant CARMONA sold 25.28 grams of heroin to the UC for $900 at the Lowe's parking lot in Pacoima, California.

27. On or about September 26, 2018, defendants CARMONA, ZUNIGA, and ANGEL sold 2,207 grams of methamphetamine to the UC for $10,800.

<u>November 9, 2018, Discussion of Distribution of an Ounce of Heroin</u>

28. On or about November 9, 2018, using coded language in a telephone call, defendant NUNO and defendant GONZALEZ BARBA discussed the price of an ounce of heroin.

<u>November 10, 2018, Discussion of Distribution of Seven Ounces of Cocaine</u>

29. On or about November 10, 2018, using coded language in a recorded telephone call, defendant NUNO asked to purchase seven ounces of cocaine from defendant GONZALEZ BARBA, and defendant GONZALEZ BARBA agreed to sell the cocaine.

30. On or about November 10, 2018, defendant GONZALEZ BARBA delivered the seven ounces of cocaine to defendant NUNO.

31. On or about November 10, 2018, in a telephone call, defendant GONZALEZ BARBA informed defendant NUNO that he had arrived with the cocaine.

November 2018 Discussion about the Sale of a Half Pound of Methamphetamine

32. On or about November 13, 2018, using coded language in a telephone conversation, defendant GONZALEZ BARBA offered to sell a Co-Conspirator 1 a half pound of methamphetamine.

33. On or about November 13, 2018, using coded language in a telephone conversation, Co-Conspirator 1 offered to buy a quarter pound of methamphetamine for $500, to which defendant GONZALEZ BARBA responded that he would deliver the quarter pound of methamphetamine later that day.

34. On or about November 16, 2018, using coded language in a telephone conversation, Co-Conspirator 1 asked defendant GONZALEZ BARBA for another quarter pound of methamphetamine, to which defendant GONZALEZ BARBA responded that he could deliver the methamphetamine.

November 2018 Discussion of the Sale of Another Half Pound of Methamphetamine

35. On or about November 20, 2018, using coded language in a telephone conversation, defendant NUNO asked defendant GONZALEZ BARBA to deliver a half pound of methamphetamine, and defendant GONZALEZ BARBA said he would deliver the methamphetamine shortly.

36. On or about November 20, 2018, in a telephone conversation, defendant GONZALEZ BARBA reported to defendant NUNO that he had arrived with the methamphetamine.

37. On or about November 20, 2018, defendant GONZALEZ BARBA delivered a half pound of methamphetamine to defendant NUNO.

### November 2018 Discussion of Sale of Another Half Pound of Methamphetamine

38. On or about November 19, 2018, using coded language in a telephone conversation, defendant GONZALEZ BARBA told Co-Conspirator 1 that he could deliver a pound of methamphetamine.

39. On or about November 20, 2018, using coded language in a telephone conversation, Co-Conspirator 1 asked if defendant GONZALEZ BARBA could loan Co-Conspirator 1 a pound of methamphetamine for $700 and said that he would give defendant GONZALEZ BARBA the rest of the money when his customer purchased more methamphetamine.

40. On or about November 20, 2018, using coded language in a telephone conversation, Co-Conspirator 1 asked if he could purchase a half pound of methamphetamine, to which defendant GONZALEZ BARBA responded that he was on his way to pick up the methamphetamine and deliver it to Co-Conspirator 1.

41. On or about November 20, 2018, in a telephone conversation, defendant GONZALEZ BARBA told Co-Conspirator 1 that he would arrive in five minutes with the methamphetamine.

### November 2018 Discussion of Sale of One and a Half Ounces of Cocaine

42. On or about November 23, 2018, using coded language in a telephone conversation, Co-Conspirator 1 informed defendant GONZALEZ BARBA that his supplier had high-quality cocaine for sale.

43. On or about November 27, 2018, using coded language in a telephone conversation, Co-Conspirator 1 asked for one and a half ounces of cocaine from defendant GONZALEZ BARBA, and defendant GONZALEZ BARBA responded that he could supply the cocaine.

44. On or about November 27, 2018, using coded language in a telephone conversation, Co-Conspirator 1 told defendant GONZALEZ

BARBA that he had money to purchase the cocaine, and defendant GONZALEZ BARBA said that he would deliver the cocaine in half an hour.

November 27, 2018 Sale of Five Ounces of Heroin

45. On or about November 15, 2018, using coded language in a telephone conversation, defendant CARMONA told the UC that his suppliers had black tar heroin for sale.

46. On or about November 26, 2018, using coded language in a telephone conversation, defendant CARMONA offered to sell five ounces of heroin to the UC for $4,250.

47. On or about November 27, 2018, defendant CARMONA met with the UC at a parking lot in Pacoima and sold 126.4 grams of heroin to the UC for $4,250.

November 2018 Discussion About the Sale of Approximately One Pound of Methamphetamine

48. On or about November 12, 2018, using coded language in a telephone conversation, defendant CARMONA told Co-conspirator 2 that he wanted a half pound of methamphetamine, and Co-Conspirator 2 responded that he could loan defendant CARMONA a pound of methamphetamine.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS VERA AND MACIAS]

On or about June 11, 2018, in Los Angeles County, within the Central District of California, defendants LUIS VERA, aka "Clever," and JULIO CESAR MACIAS, aka "Troll," aiding and abetting each other, knowingly and intentionally distributed at least 50 grams, that is, approximately 443.1 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS VERA, MACIAS, AND GONZALEZ BARBA]

On or about July 10, 2018, in Los Angeles County, within the Central District of California, defendants LUIS VERA, aka "Clever," JULIO CESAR MACIAS, aka "Troll," and TARCICIO GONZALEZ BARBA, aka "Cholo," aiding and abetting each other, knowingly and intentionally distributed at least 50 grams, that is, approximately 1,327 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS VERA, CARMONA, AND REYES]

On or about August 30, 2018, in Los Angeles County, within the Central District of California, defendants LUIS VERA, aka "Clever," DANIEL CARMONA, aka "Crook," "Crooks," and "Krooks," and ESMERELDA YADIRA REYES, aiding and abetting each other, knowingly and intentionally distributed approximately 25.29 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

                           COUNT FIVE

     [21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

              [DEFENDANTS VERA, CARMONA, ZUNIGA, AND ANGEL]

     On or about September 26, 2018, in Los Angeles County, within the Central District of California, defendants LUIS VERA, aka "Clever," DANIEL CARMONA, aka "Crook," "Crooks," and "Krooks," NICOLAS ZUNIGA JUAN, JR., aka "Juan" and "Juanito," and FNU LNU, aka "Angel," aiding and abetting each other, knowingly and intentionally distributed at least 50 grams, that is, approximately 2,207 grams, of methamphetamine, a Schedule II controlled substance.

                        COUNT SIX

              [21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

                      [DEFENDANT CARMONA]

     On or about September 26, 2018, in Los Angeles County, within the Central District of California, defendant DANIEL CARMONA, aka "Crook," "Crooks," and "Krooks," knowingly and intentionally distributed approximately 25.28 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i)]

[DEFENDANT CARMONA]

On or about November 27, 2018, in Los Angeles County, within the Central District of California, defendant DANIEL CARMONA, aka "Crook," "Crooks," and "Krooks," knowingly and intentionally distributed at least 100 grams, that is, approximately 126.4 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

FORFEITURE ALLEGATION

[21 U.S.C. § 853; 28 U.S.C. § 2461(c)]

[ALL DEFENDANTS]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in Counts One through Seven of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b) All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense;

(c) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(d) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3. Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted, shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold

to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

SHAWN J. NELSON
Assistant United States Attorney
Chief, International Narcotics
 Money Laundering, & Racketeering
 Section

EDWARD HAN
Assistant United States Attorney
International Narcotics,
 Money Laundering, & Racketeering
 Section